IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ABU ABDUL AZIZ, *et al.*,<br><br>Petitioners,<br><br>　　　v.<br><br>GEORGE W. BUSH,<br>　　President of the United States,<br>　　*et al.*,<br><br>　　　　Respondents. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 05-CV-1864 (HHK)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PETITIONERS' MEMORANDUM IN RESPONSE TO RESPONDENTS'
MOTION FOR ORDER TO SHOW CAUSE WHY CASE SHOULD NOT BE
DISMISSED FOR LACK OF PROPER "NEXT FRIEND" STANDING OR, IN
THE ALTERNATIVE, TO STAY PROCEEDINGS PENDING RELATED
APPEALS**

This Memorandum is submitted in response to Respondents' Motion For Order To Show Cause ("Motion") why this matter should not be dismissed for lack of proper "Next Friend" standing or, in the alternative, to stay the proceedings pending related appeals and for continued coordination. Petitioners respectfully request that Respondents' Motion be denied and that undersigned counsel be afforded the opportunity to travel to Guantánamo to meet with Mr. Aziz and confirm that he wishes to challenge his detention.

Petitioners oppose Respondents' request to stay proceedings to the extent that it would not permit counsel to travel to Guantánamo and confer with Mr. Aziz. Further, Respondents should be required to provide Petitioners with a factual return in response to the Petition for Writ of Habeas Corpus.

# ARGUMENT

## I. RESPONDENTS' MOTION FOR ORDER TO SHOW CAUSE SHOULD BE DENIED.

### A. Petitioners Have Established Proper "Next Friend" Standing.

Respondents' Motion should be denied because the Petition for Writ of Habeas Corpus ("Petition") is properly before the Court.  On or about March 17, 2005, an attorney from the law firm of Dorsey & Whitney LLP met with his client, Isa Ali Al-Murbati, a detainee at the U.S. Naval Base at Guantánamo Bay, Cuba.  Declaration of Joshua Colangelo-Bryan, ¶ 4 (attached hereto as Exhibit A).  At that time Mr. Al Murbati told his attorney about another inmate who wanted a lawyer.  Id., ¶ 5.  Mr. Al Murbati told his attorney that the inmate was the petitioner, Abu Abdul Aziz.  Id.  He indicated that Mr. Aziz understood there was a legal process underway in the U.S. courts challenging the legality of the detainees' confinement and that Mr. Aziz had asked Mr. Al Murbati for assistance in getting him a lawyer.  Id.

Mr. Al Murbati told his attorney that Mr. Aziz was an Egyptian he had met in Camp Five who was confined to a wheelchair.  Id., ¶ 6.  Mr. Al Murbati seemed particularly concerned about Mr. Aziz.  Id.  He told his attorney that Mr. Aziz had told him that one year before, while Mr. Aziz was sitting on the floor at Camp Delta, four Military Police Officers pushed his head down towards the ground and "broke his back."  Id., ¶ 7.  He was shackled by force and taken to a car where he sat for five (5) hours.  Id.  The shackles were very tight.  Id.  Subsequently Mr. Aziz was taken to the regular naval hospital at Guantánamo Bay where X-rays were taken that apparently showed fractured vertebrae.  Id.  Mr. Aziz was told he needed an operation but declined because he had

2

heard of other detainees who had had operations that failed.  Id.  Mr. Al Murbati told his attorney that Mr. Aziz is always in a wheelchair, even in the shower.  Id.

Mr. Al Murbati's attorney explained to him that he could be "next friend" for Mr. Aziz, as well as for two other detainees who Mr. Al Murbati indicated also wanted attorneys.  Id., ¶ 8.  The attorney then drafted an authorization for Mr. Al Murbati to sign authorizing Dorsey & Whitney LLP or attorneys designated by Dorsey & Whitney LLP to represent Mr. Aziz.  Id.  Mr. Al Murbati then executed this authorization as "next friend" to Mr. Aziz.  Id.  A copy of this authorization is attached to the Declaration of Joshua Colangelo-Bryan, Exh. A, Tab A.  After returning from Guantánamo Bay, Mr. Al Murbati's attorney provided the next friend authorization to the Center for Constitutional Rights so it could assist in identifying counsel for Mr. Aziz and the two other named detainees.  Id.

Thus, in keeping with Mr. Aziz's request, Mr. Al Murbati authorized Dorsey & Whitney LLP, or attorneys designated by Dorsey & Whitney LLP, to represent Mr. Aziz.  Given these facts, the Petition for Writ of Habeas Corpus filed on behalf of Mr. Aziz is properly before the Court and should not be dismissed for "lack of proper next-friend standing."

Petitioners have also demonstrated a "significant relationship" sufficient to provide Mr. Al Murbati standing as a "next friend" who is dedicated to the detainee's best interests.  As noted above, Mr. Al Murbati specifically raised the issue of Mr. Aziz's desire to obtain counsel with his attorneys, telling them that Mr. Aziz was an Egyptian being held at Camp 5, and indicating that he was particularly concerned about Mr. Aziz, owing to the fact that he had been injured and was now confined to a wheelchair.  He also

3

provided his attorney with the ISN number for Mr. Aziz. These examples of specific biographical and personal information about Mr. Aziz on whose behalf habeas is sought indicate Mr. Al Murbati shares a meaningful relationship with this detainee and therefore can be determined to be acting in Mr. Aziz's best interest.

In addition, the specific information concerning Mr. Aziz (i.e. his name, country of origin, ISN number, and detention camp) eliminate some of the "identification issues that have plagued the parties in the Guantánamo detainee litigation thus far." See Motion, p. 12-13.

  **B.**  **Respondents' Motion For Order to Show Cause should be denied as any alleged deficiencies in the "Next Friend" authorization are the result of the Respondents' policies.**

Respondents' Motion should be denied on the grounds that, in asking Mr. Al Murbati to get him a lawyer, Mr. Aziz followed the very procedures set forth and communicated to him by the Respondents. The written notifications Respondents cite in support of their Motion specifically state "you may ask a ***friend***…to file such a petition with the Court." See Second Declaration of Frank Sweigart, attached to Respondents' Motion as Exh. A, at ¶¶ 3-5 (emphasis added) and Exhs. A, B, and C attached thereto. The notifications do not say that the detainee must seek the assistance of "an individual satisfying the standing requirements under federal law for Next Friend status." The notifications state, *inter alia*:

> You may ask a friend or family member or a lawyer to file
> such a petition with the Court. If you do not have a lawyer
> or a family member or a friend who could file this petition
> for you, you may file your own petition. Id.

The notifications say the detainee may ask a "friend" to file a petition on the detainee's behalf. That is exactly what Mr. Aziz did: he asked a friend, Mr. Al Murbati to get him a

4

lawyer. Mr. Aziz's compliance with the very procedures set forth by the Respondents for filing a petition for writ of habeas corpus should not provide the basis by which the petition can be dismissed at a later date.

Respondents argue that the Petition should be dismissed since, if he had wanted to challenge his confinement, Mr. Aziz could have submitted the petition himself. See Motion, p. 8. This argument is based on the false premise that detainees at Guantánamo Bay have been allowed unfettered access to the courts of the United States. As Judge Kollar-Kotelly explained in rejecting the Government's post-Rasul argument that the detainees have no right of access to counsel,

> the detainees have been detained virtually incommunicado for nearly three years without being charged with any crime. To say that Petitioners' ability to investigate the circumstances surrounding their capture and detention is "seriously impaired" is an understatement. The circumstances of their confinement render their ability to investigate nonexistent. Furthermore, *it is simply impossible to expect petitioners to grapple with the complexities of a foreign legal system and present their claims to this Court without legal representation. Petitioners face an obvious language barrier, have no access to a law library, and almost certainly lack a working knowledge of the American legal system*.

Al Odah v. United States, 346 F. Supp. 2d 1, 8 (D.D.C. 2004) (emphasis added) (quoting Battle v. Armontrout, 902 F.2d 701, 702 (8th Cir. 1990)).

It is unreasonable and unrealistic for the Respondents to pretend that the prisoners can easily secure the legal assistance that they desire. In fact, there are certain areas of the prison complex at Guantánamo Bay that have special problems as the prisoners are isolated and held incommunicado. See Declaration of Clive A. Stafford Smith, ¶¶ 90-96 (attached hereto as Exh. B). The Military has interfered with the right to counsel, and in fact manipulated the prisoners into thinking that their lawyers are part of or related to the Guantánamo Bay operation. See id., ¶¶ 97-107. Interrogators consistently tell prisoners

5

that the lawyer's advice is wrong and have even engaged in deceptive practices such as impersonating counsel.  See id.

      Respondents also claim that detainees at Guantánamo Bay have the ability to send and receive mail, see Motion, p. 8., meaning that Mr. Aziz could have contacted someone on the outside and arranged to have them file a habeas petition on his behalf, if he so desired.  However, despite the numerous efforts of the Center for Constitutional Rights ("CCR") to receive next of friend authorizations for the prisoners, CCR and its partners have been unable to identify next friends for the vast majority of Guantanamo detainees. See Declaration of Barbara Olshansky, ¶¶ 5-8 (attached hereto as Exh. C).  Upon information and belief, over 300 prisoners remain unrepresented for the simple reason that the Respondents have held them virtually incommunicado and in physical isolation. See id., ¶ 8.  Despite many good faith efforts to communicate with the Respondents, CCR has been denied the opportunity to communicate with the detainees and advise them of their rights. See id., ¶¶ 11 - 18.  Through many attempts, the Petitioners' counsel have attempted to obtain the names and identifying information of the detainees, however the Respondents have denied all of these requests.  See id.  The very information that the Respondents claim is deficient in the authorization of Mr. Aziz was repeatedly requested by CCR.  See id.  As stated above, it is disingenuous for the Respondents to point to supposed insufficiencies in the next friend authorizations when the Respondents have refused to comply with the numerous requests for even basic information.

      Additionally, confounding the problem, the Respondents' have not given accurate information to the allies of the United States.  This inaccuracy of the Respondents' own

6

data is a cause of misinformation. See Smith Declaration, ¶¶ 31- 38. Even if, and in spite of the numerous roadblocks imposed by the Respondents, the prisoners were identified, it is even more difficult if not impossible to identify the names of the prisoners' family members. See id., ¶¶ 39 - 42. The Respondents' however accuse the volunteer counsel for the prisoners of "improperly abusing the next friend in order merely to solicit the Guantánamo detainee population for clients..." See Motion, p.13 n. 10. Such an allegation - presumably with overtones of ethical impropriety - is difficult to accept in light of the fact that Petitioners' counsel have gone to great length to secure counsel for the prisoners. See Smith Declaration, ¶¶ 43 - 46. Such processes have been extremely expensive and time consuming, and the undersigned have not received any remuneration. See id. The only reason Petitioners' counsel has sought out next of friends is because the Respondents have held them effectively incommunicado in Guantánamo Bay. See id.

The Respondents argue that using 'friends' of the prisoners at Guantánamo is unnecessary because there are other ways to achieve the same ends. See Motion, p. 8. This argument suggests that authorizations from family members is a more simple alternative. However, such a process is extremely difficult if not impossible due to the need for international travel and/or foreign government interference. See Smith Declaration, ¶¶ 47 - 77.

Respondents also rely on a new process the Department of Defense has negotiated with the American Bar Association ("ABA") by which "the ABA has agreed to recruit volunteer counsel for *pro se* petitioners and other detainees who may desire

representation." Second Declaration of Frank Sweigart, attached to Respondents' Motion as Exh. A, ¶7 and Exh. E attached thereto. The involvement of the ABA is a positive step and only confirms that the Respondents now acknowledge that there must be a meaningful process for advising detainees of their habeas rights and for allowing them to request representation by counsel.

But even assuming the new ABA process will be meaningful, that does not provide a basis for issuing an order to show cause. Respondents argue that given the past notifications and the new ABA process, if Mr. Aziz wanted to file a petition for writ of habeas corpus, he would (or will) do so on his own behalf. They suggest that these "next friend" petitions must therefore be subjected to rigorous scrutiny under an order to show cause to determine whether the requirements of <u>Whitmore v. Arkansas</u>, 495 U.S. 149 (1990), have been met. The futility and waste of this exercise is obvious. Even if (a) the Court were to issue an order to show cause, (b) "next friend" standing were thoroughly briefed and (c) Mr. Aziz's petition were dismissed for lack of standing, presumably Mr. Aziz would be given the ABA notice. In all likelihood, he would send the card to the ABA requesting counsel; the ABA would appoint counsel (likely the counsel who filed the original petition) and the same petition for writ of habeas corpus would then be re-filed after months or years of delay. If the Respondents' position is that this is the process that must be followed – a process with no legal significance – they will have confirmed allegations that their principal objective is impediment and delay.

    **C.**    **Respondents' have not shown that the prisoners have received**

**adequate notification of their rights to submit habeas corpus petitions, and the Respondents' generalization that all detainees have received notification of their rights leaves unanswered factual questions.**

The Respondents argue they have "notified each detainee at Guantanamo Bay of his right to file a petition for habeas corpus..." See Motion, p. 6.  However, the Respondents have provided an inadequate description of the prisoners' legal rights. See Smith Declaration, ¶¶ 108 - 116.  Between July 12 and 14, 2004, each prisoner was apparently given a notice that they would be notified in the future what procedures are available to challenge their detention.  See Olshansky Declaration, ¶¶ 19- 22.  However, the Respondents did not seek to even attempt to explain these procedures until mid-December 2004.  See id.  These explanations, however, did not provide practical information which in any way enabled the prisoners to secure counsel in order to file a petition in court.  See id., ¶¶ 20-21.  Some prisoners have not been allowed to obtain copies of the ECN notices, and/or were only allowed to review the form briefly.  See Smith Declaration, ¶¶ 108 - 116.  Additionally, there are great problems, both cultural and lingual, leading to the fact that the notification is almost incomprehensible to the prisoners. See id., ¶¶ 117 - 119.  Lastly, many of the detainees are in poor physical and mental condition, and in combination to the fact that they are held incommunicado, it is almost impossible for the prisoners to contact the outside world.  See Olshansky Declaration, ¶ 22.

The Respondents insist that more information be supplied by the next friends, however this would cause a tremendous delay in securing legal assistance for the prisoners. See Smith Declaration, ¶¶ 120 - 125.  Lastly, there should be no concern that a prisoner would be provided with counsel in a case where he does not want it, as there is a

system in place whereby counsel must secure an "Acknowledgment of Representation" form signed by the prisoner. See id., ¶ 126.

Among the factual questions left unanswered are (1) whether Mr. Aziz personally received notice of his right to file a habeas petition, (2) whether (assuming he received the notice) he understood its contents, (3) whether he knew and understood the requirements for preparing and filing a habeas petition, and (4) whether he was permitted to send and receive mail. Denial of Respondents' Motion will obviate the necessity of addressing and answering these questions (and others) that must be answered before determining whether Mr. Aziz has had realistic "access" to this Court to file a habeas corpus petition.

### D. The Supreme Court Has Ruled that Petitioners Have the Right To File Habeas Petitions with the Advice and Assistance of Counsel.

The Supreme Court has made clear that the federal habeas statute "confers on the District Court jurisdiction to hear petitioners' habeas corpus challenges to the legality of their detention at the Guantánamo Bay Naval Base." Rasul v. Bush, 124 S. Ct. 2686, 2698 (2004). The detainees may not be denied the access to counsel that is crucial to their ability to bring such challenges in federal court. See Hamdi v. Rumsfeld, 124 S. Ct. 2633, 2652 (2004) (O'Connor, J., plurality opinion) ("He [Hamdi] unquestionably has the right to access to counsel in connection with the proceedings on remand."); *id.* at 2660 (Souter, J., concurring); Rasul, 124 S. Ct. at 2698 n.15 (plaintiffs' allegations of detention "without access to counsel and without being charged with any wrongdoing— unquestionably describe 'custody in violation of the Constitution or laws or treaties of the United States.'"). As Judge Kollar-Kotelly recognized in rejecting the Government's post-Rasul argument that the detainees have no right of access to counsel: "The Supreme

10

Court has found that Petitioners have the right to bring their claims before this Court, and this Court finds that Petitioners cannot be expected to exercise this right without the assistance of counsel." Al Odah, 346 F. Supp. 2d at 8 (D.D.C. 2004).

Government officials have publicly acknowledged the necessity of taking action to enable detainees to consult with counsel. For example, during a Department of Defense briefing on July 7, 2004, a senior Justice Department official was asked whether currently unrepresented Guantánamo detainees would have access to counsel. The official replied that lawyers would have access to the detainees but that the "precise details of that would have to be worked out in the future." Defense Department Background Briefing on the Combatant Status Review Tribunals, July 7, 2004, available at http://www.defenselink.mil/ transcripts/2004/tr20040707-0981.html. Similarly, in a news briefing two days later, Navy Secretary Gordon England acknowledged that all detainees—including those who were then unrepresented—would "have legal representation . . . if they elect to do that [*i.e.*, file a habeas corpus petition]." Defense Department News Briefing on the Combatant Status Review Tribunals, July 9, 2004, available at http://www.defenselink. mil/transcripts/2004/ tr20040709-0986.html. He further promised that the Government would "work to facilitate" counsel's access to the unidentified detainees "*as quickly as we can*," and envisioned the need "to work out something with groups of lawyers or groups of detainees." Id. (emphasis added).

E.  **Undersigned Counsel Requests Permission to Confer with Mr. Aziz.**

All the issues and concerns raised by the Respondents in the Motion could be quickly and easily resolved by allowing the undersigned counsel to go to Guantánamo and confer with Mr. Aziz to determine whether or not he desires to pursue a writ of

11

habeas corpus. If Mr. Aziz desires to be represented, undersigned counsel could obtain an appropriate authorization. If Mr. Aziz does not desire to pursue legal remedies, undersigned counsel will immediately notify Respondents and this Court.

As the Respondents point out in their Motion, the Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantánamo Bay, Cuba in In re Guantánamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Nov. 8, 2004), § III.C, permits counsel two visits with a detainee to determine if the detainee desires representation. Undersigned is only requesting what has been granted in Judge Green's prior order. Undersigned counsel is familiar with the requirements and restrictions set out in the order signed by Judge Green and represents to this Court that he is willing to abide by them.

## II. RESPONDENTS' ALTERNATIVE MOTION FOR STAY SHOULD BE DENIED IN PART.

The Respondents have requested the Court to stay proceedings in this case pending resolution of appeals in Khalid, Boumediene and In re Guantánamo Detainee Cases. Petitioner is aware that this Court has granted stays in other cases pending before the Court. Petitioner opposes Respondents request to stay proceedings to the extent that it would not permit counsel to travel to travel to Guantánamo and confer with Mr. Aziz. Further, the Respondents should be required provide Petitioners with a factual return in response to their Petition.

### A. Undersigned Counsel Should Be Allowed to Confer with Mr. Aziz

Respondents have stated in their Motion that "in seeking a stay to the extent the next friend petitioners are determined to satisfy applicable requirements, however, respondents do not intend to thereby block counsel access to properly represented

12

petitioners." Motion, p. 21, n. 18. As stated above, it is Petitioner's position that the Court's order allowing counsel to confer with Mr. Aziz would resolve all of the issues raised by the Respondents and ensure an accurate determination as to whether Mr. Aziz wishes to proceed with his Petition. Therefore, Petitioner respectfully requests that if a stay is granted, counsel be allowed to travel to Guantánamo and to confer with Mr. Aziz.

      **B.**     **Respondents Should Be Required to Submit a Factual Return In Response to the Petition.**

Alternatively, if the Court were inclined to grant the Motion to Stay, Petitioners request that the Court order the Government to submit a factual return in response to the Petition. The Respondents have acknowledged in their Motion that, even if the requested stay is granted, counsel for Petitioners should nevertheless be entitled to communicate with Petitioners, pursuant to the procedures that have been established to protect against the unauthorized dissemination of classified information. Counsel's ability to engage in such communications in a meaningful manner would be significantly impaired if the government were not required at least to provide counsel with a factual return outlining the alleged basis for Petitioner Aziz's detention. It should be noted that Respondents have been specifically ordered to provide factual returns in six other cases, despite the fact that the cases had otherwise been stayed.[1]

---

[1] See, e.g., Kurnaz v. Bush, No. 04-CV-01135 (ESH), 2005 WL 8329542, at *1 (D.D.C. Apr. 12, 2005) (stating that habeas counsel require access to the full factual returns now "to ensure that the proceedings can continue in an orderly fashion in the event that detainees prevail on appeal"); Al-Adahi v. Bush, No. 05-CV-00280 (GK), slip op. at 2 & n.1 (D.D.C. Apr. 29, 2005) (ordering production of factual returns so that petitioners' counsel "can begin preparing their defense well in advance of any ruling by the Court of Appeals"); Al-Anazi v. Bush, No. 05-CV-00345 (JBD), slip op. at 20 (D.D.C. Apr. 21, 2005) (ordering the U.S. Government to produce factual returns and noting that "the factual returns appear necessary for petitioners' counsel effectively to represent petitioners," and "even initial conversations by counsel with their clients may be very difficult without access to that basic factual information"); see also Al-Shamri v. Bush, No. 05-CV-00551 (RWR), slip op. at 4 (D.D.C. May 10, 2005) (staying proceedings but ordering the

13

## CONCLUSION

WHEREFORE, Petitioners respectfully request that the Court deny Respondents' Motion for Order to Show Cause, as well as its alternative Motion to Stay. Petitioners further request that in the event that the Court grants the Motion to Stay, counsel for the petitioner should not be prohibited from traveling to Guantánamo to confer with Mr. Aziz and that the Court order that Respondents provide Petitioners with a factual return in response to the Petition.

Dated: September 30, 2005

Respectfully submitted,

Counsel for Petitioners:

   Michael E. Mone, Jr.  /s/
Michael E. Mone
(MA BBO No. 351680)
Michael E. Mone, Jr.
(MA BBO No. 634607)
ESDAILE, BARRETT & ESDAILE
75 Federal Street
Boston, MA  02110
(617) 482-0333

*Of Counsel*
Barbara Olshansky (NY0057)
Tina Monshipour Foster (TF5556)
Gitanjali S. Gutierrez (GG1234)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

---

Government to produce factual returns); El-Banna v. Bush, No. 04-CV-01144 (RWR), slip op. at 7 (D.D.C. Apr. 8, 2005) (same); Errachidi v. Bush, No. 05-CV-00640 (EGS) (D.D.C. Apr. 21, 2005) (minute order) (same).

14

Case 1:05-cv-01864-HHK   Document 4   Filed 10/03/2005   Page 15 of 15