*Approved for filing by the CSO*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| ABU ABDUL AZIZ (ISN #278) et al., | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-CV-1864 (HHK) |
| | ) | |
| GEORGE W. BUSH, et al., | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

### OPPOSITION TO RESPONDENTS' MOTION TO DISMISS,
### MOTION FOR A STAY-AND-ABEY ORDER, AND NOTICE OF INTENT TO
### FILE PETITION UNDER THE DETAINEE TREATMENT ACT

Petitioner, Abu Abdul Aziz, through his counsel, opposes Respondents' Motion to

Dismiss and further respectfully requests that this Court, in the interests of justice, stay

the dismissal of this habeas action pending Petitioner's exhaustion of his remedies in the

Court of Appeals under the Detainee Treatment Act of 2005, Pub. L. No. 109-148, 119

Stat 2680 (2005) ("DTA"), and hold this action in abeyance pending Petitioner's

exhaustion of those remedies and the resolution in the Supreme Court of a renewed

petition for certiorari to review the Court of Appeals' jurisdictional holding in

*Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), or the Supreme Court's resolution of

the same jurisdictional issue as presented in an original habeas petition in *In re Ali*, No.

06-1194.  Petitioner further hereby notifies this Court of his intent to file a petition under

the DTA in the District of Columbia Circuit Court of Appeals.

Respondents' Motion is based on an inaccurate reading of the effect of the Court of Appeal's split decision in *Boumediene v. Bush*, and the split commentary from the Supreme Court Justices on the denial of certiorari in that case. 476 F.3d 981 (D.C.Cir.), 127 S.Ct. 1478 (2007). Respondents' jurisdictional argument only applies to frivolous claims: As established by the split *Boumediene* opinions and the important questions deferred pending exhaustion, Petitioner's claim to habeas jurisdiction is substantial, especially given that this Court had jurisdiction at the time of filing under *Rasul v. Bush*, 542 U.S. 466 (2004).

At the time Petitioner filed his petition, this Court had jurisdiction to review the grounds for detention, as the Supreme Court held in *Rasul v. Bush,* 542 U.S. 466 (2004). Since that time, Respondents have claimed that subsequently-enacted statutes have deprived the District Courts of jurisdiction, a position Petitioner contests based on an array of factual and legal arguments. Respondents now request that all orders protecting Petitioner in this matter should be vacated, and the underlying petition should be dismissed, without the opportunity to persuade this Court that Petitioner's case is viable and to make a record for appellate and Supreme Court review.

Respondents' position is untenable for six reasons: 1) *Boumediene v. Bush*, 127 S.Ct. 1478 (2007), is not final nor is it dispositive given the statements of Justices Stevens and Kennedy regarding the need to exhaust remedies before the Court will grant certiorari; 2) the procedure for addressing a pending habeas corpus petition while remedies are exhausted is for the district court to stay the proceedings and hold them in abeyance pending exhaustion, *see Rhines v. Weber*, 544 U.S. 269 (2005); 3) While the

Supreme Court rules on the jurisdictional questions, the lower courts have "authority,

from the necessity of the case, to make orders preserv[ing] the existing conditions and the

subject of the petition"; *United States v. United Mine Workers*, 330 U.S. 258, 290-91

(1947); 4) the authority relied upon by Respondents is limited to frivolous jurisdictional

claims, not the epic constitutional issues raised by statutes that purport to divest

jurisdiction and disenfranchise an easily identifiable group of Muslims from access to the

courts; 5) the stay-and-abey procedure is especially appropriate in the context of the need

for orders by the District Courts to "ensure that the office and purposes of the writ are not

compromised;" and 6) Petitioner is not bound by the record established to date in

*Boumediene*

      1.      **_Boumediene_ Is Not Final Or Binding Because The Denial Of Certiorari Was Based In Part On The Failure To Exhaust Remedies, Which Are Still Available To Petitioner And Are Being Exercised By This Petitioner.**

On February 20, 2007, a split panel of the D.C. Circuit Court of Appeals decided

combined cases involving non-U.S. nationals detained at Guantánamo, finding that post-

*Rasul* statutes deprived courts of jurisdiction. *Boumediene v. Bush*, 476 F.3d 981 (D.C.

Cir. 2007). Because the petitioners in that case declined to seek review directly with the

Court of Appeals under the DTA, that Court found that the "only recourse" was to vacate

the District Court decision and dismiss the case for lack of jurisdiction. *Boumediene*, 476

F.3d at 994. The petitioners then petitioned for a writ of certiorari and, on April 2, 2007,

the Supreme Court denied certiorari, with both a three-Justice dissent and a statement

from two other justices respecting the denial of certiorari. *Boumediene v. Bush*, 127 S.Ct.

1478 (2007).

The statement of Justices Kennedy and Stevens found that, given "our practice of requiring the exhaustion of available remedies as a precondition to accepting jurisdiction over applications for the writ of habeas corpus," denial of certiorari was appropriate "at this time." The Justices specifically expressed concern regarding maintenance of the status quo during the litigation: "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" *Id.* (quoting *Padilla v. Hanft*, 547 U.S. 1062 (Kennedy, J., concurring in the denial of certiorari)).

The Respondents' reliance on *Boumediene* is misplaced for several reasons. First, Justice Stevens and Kennedy's explicit adoption of the exhaustion model based on *Ex parte Hawk,* 321 U.S. 114 (1944), support maintenance of these cases while the DTA remedy is exhausted. Second, the jurisdictional questions have not been finally resolved because "as always, denial of certiorari does not constitute an expression of any opinion on the merits." *Boumediene*, 127 S.Ct. at 1478 (Stevens and Kennedy, JJ)(citing *Rasul*, 542 U.S. at 480-81). Third, Justice Stevens and Kennedy's citation to Supreme Court authority regarding the efficacy of the alternative remedies contemplates an underlying habeas corpus case in which the petitioner can present such arguments to the District Court and, if necessary, the Circuit Court and Supreme Court.

     *a.     Justices Stevens and Kennedy Explicitly And This Court Implicitly Adopted The Exhaustion Of Remedies Model For Habeas Relief.*

     *Boumediene* does not control this case because, unlike the petitioners in that case, Petitioner Aziz is exhausting his remedies under the DTA. The Circuit Court opinion expressly predicated its dismissal order on the petitioners' failure to utilize available remedies under the DTA. *Boumediene*, 476 F.3d at 994. Justices Stevens and Kennedy explicitly explained that "[d]espite the obvious importance of the issues," the Court was denying certiorari "at this time" in light of the Court's practice of requiring exhaustion of available remedies, citing *Ex parte Hawk*.

     The citation to *Hawk* is telling. In that case, the petition filed for federal habeas corpus relief under circumstances, as in the present case, in which the effectiveness of state remedies had not been established. The Supreme Court not only applied the exhaustion rule but held that the adequacy of the available remedy should be decided in the first instance by "the federal district court":

> Where the state courts have considered and adjudicated the merits of his contentions, and this Court has either reviewed or declined to review the state court's decision, a federal court will not ordinarily reexamine upon writ of habeas corpus the questions thus adjudicated.....But where resort to state court remedies has failed to afford a full and fair adjudication of the federal contentions raised, either because the state affords no remedy.....or because in the particular case the remedy afforded by state law proves in practice unavailable or seriously inadequate...., a federal court should entertain his petition for habeas corpus, else he would be remediless. In such a case he should proceed in the federal district court before resorting to this Court by petition for habeas corpus.

321 U.S. at 118 (citations omitted). The exhaustion model anticipates that the ultimate questions regarding jurisdiction, which may depend in large part on the efficacy of the DTA remedy, will

first be considered and decided in the District Court.  The ultimate issues would then be

preserved for appellate and Supreme Court review, if necessary.

> b.    *The Supreme Court Has Not Decided Any Questions Regarding The Jurisdiction Of This Court Or The Rights That Can Be Enforced Through Habeas Corpus Proceedings.*

Respondents' claims regarding *Boumediene* ignore the simple reality that "as always,

denial of certiorari does not constitute an expression of any opinion on the merits." 127 S.Ct. at

1478.  As the three dissenting Justices opined, and as did Judge Rogers in dissent, the

constitutional ramifications of a statute that purports to disenfranchise petitioners in existing

habeas corpus petitions are profound and of obvious importance.  With the addition of Justices

Stevens and Kennedy's statement, the petition of Mr. Aziz should be fully considered, after

exhaustion, upon the unique facts and legal arguments presented.  The *Boumediene* case does not

finally resolve the jurisdictional questions in this case.[1]

> c.    *The Jurisdictional Questions Regarding Habeas Corpus Cannot Be Resolved Until The Adequacy Of The DTA Remedy Becomes Known.*

Questions regarding the suspension and elimination of the writ of habeas corpus require

consideration of whether alternative remedies provide protection coextensive with the Great

Writ.  *Swain v. Pressley*, 430 U.S. 372, 381 (1977)("the substitution of a collateral remedy which

is neither inadequate nor ineffective to test the legality of a person's detention does not constitute

---

[1]  The *Boumediene* case does not even finally decide the questions for the *Boumediene* petitioners, given that the mandate has not issued and the cases are still subject to motions and briefing.

a suspension of the writ of habeas corpus."). The *Boumediene* statement on certiorari clearly stated, with citation to *Marino v. Ragen*, 332 U.S. 561 (1947), that, if the DTA remedy is "inadequate," the Court is prepared to address the merits of the habeas corpus claims. *Boumediene* 127 S. Ct.at 1478 (statement of Stevens and Kennedy, J.J.). Further, the Court stated that, in the interim, the Respondents should take no additional steps "to prejudice the position of petitioners" in seeking review. *Id.* By maintaining the present case in the District Court, the Court is in a position to "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised." *Id.*

The exhaustion model from the *Boumediene* litigation requires that the District Court proceeding remain in place for potential post-exhaustion litigation.

> **2.    Because Exhaustion Of Remedies Is Available To The Petitioner, The District Courts Have Discretion To Enter Stay-And-Abey Order.**

Given the need to exhaust remedies under the DTA, the proceedings in this action should be stayed and held in abeyance pending completion of the Petitioner's DTA case directly in the Court of Appeals. In *Rhines* the Supreme Court explicitly approved the stay-and-abey procedure in the closely analogous context of federal habeas corpus proceedings. 544 U.S. at 278. In *Rhines*, the prisoner filed a mixed habeas petition in federal court, which contained both claims exhausted through the state court system as well as unexhausted claims. Given the major procedural risks of a dismissal order, the Court found that district courts have discretion to stay the federal habeas corpus case and hold it in abeyance for a reasonable time while available state remedies are exhausted.

The *Rhines* court found three preconditions that mandate a stay-and-abey

approach.  In the absence of intentional dilatory tactics by the petitioner, "it is likely be

an abuse of discretion for a district court to deny a stay and to dismiss" a petition if the

petitioner has good cause for the failure to exhaust and the unexhausted claims are

potentially meritorious. *Rhines*, 544 at 278; *accord Pace v. DiGuglielmo*, 544 U.S. 408,

416-17 (2005).  The conditions under which failure to stay-and-abey would constitute an

abuse of discretion—no deliberate delay, good cause, and potentially meritorious

claims—are abundantly present in this case.  Petitioner has not previously filed DTA

petitions in the D.C. Circuit Court of Appeals for good reason, believing the DTA to be

unconstitutional. Unlike the death penalty cases that caused the Supreme Court concern

in *Rhines*, every day of delay prejudices the Petitioner. [2]

     There is also good cause for the failure to exhaust until now: the potential remedy

did not exist until after the habeas corpus petitions in this action were filed and did not

purport to provide the habeas relief to which Petitioner was entitled at the time his habeas

action was filed.  In *Pace*, the Supreme Court noted that potential confusion regarding

state remedies required equitable protections.  544 U.S. at 416. Guantánamo detainees

face even greater complexities.  The questions left open in the Supreme Court's decision

in *Rasul*, which established a right to proceed under 28 U.S.C. § 2241 at the time

Petitioner filed this action and the subsequent DTA and Military Commissions Act of

2006, Pub. L. No. 109-366, 120 Stat. 2600 (Oct. 17, 2006) ("MCA"), created substantial

---

[2] In *Rhines*, three Justices concurred, stating that stay-and-abey is required in the absence of proof of "intentionally dilatory litigation tactics." 544 U.S. at 279 (Souter, J., concurring, joined by Justices Ginsburg and Breyer).

uncertainties.  Petitioner did not even have the potential DTA remedy prior to October

2006, because, as the Supreme Court held, the DTA did not apply retrospectively to

habeas corpus petitions filed prior to the effective date of the statute. *Hamdan v.*

*Rumsfeld*, 126 S.Ct. 2749, 2762-69 (2006).

Respondents attempt to distinguish *Rhines* fails.  (Motion at 6-7).  The exhaustion

required by *Hawk* operates as does the exhaustion required by the statute in *Rhines*.  Further, the

procedural obstacles that dismissal would create under 28 U.S.C. § 2254 are no different—

although perhaps more profound—than those facing detainees in Guantánamo, cut off from

contact with their lawyers.  *Rhines* is controlling authority regarding stay-and-abey procedures

while remedies are being exhausted.

### 3.    The Court Has Authority To Preserve The Status Quo While Jurisdictional Questions Are Litigated.

In the statement accompanying the *Boumediene* order denying certiorari, Justices

Stevens and Kennedy stated: "Were the Government to take additional steps to prejudice

the position of petitioners in seeking review in this Court, 'courts of competent

jurisdiction,' including this Court, 'should act promptly to ensure that the office and

purposes of the writ of habeas corpus are not compromised.'" 127 S.Ct. 1478 (2007)

(Justices Stevens and Kennedy, statement respecting the denial of certiorari). The

Justices' language echoes the long-established principle that, even if there is no

jurisdiction, that ultimate question is for the Supreme Court, and that while a question is

under consideration, the courts have "authority from the necessity of the case to make

orders to preserve the existing conditions and subject of the petition." *United Mine*

*Workers*, 330 U.S. at 291 (quoting *United States v. Shipp*, 203 U.S. 563, 573 (1906)

(Holmes, J.)).  The Court of Appeals has not hesitated to apply these principles:

> Of course, whether or not there was jurisdiction to decide the merits, until the question of jurisdiction is determined, there was "authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition . . . ." . . . Clearly there was "power to preserve existing conditions while . . . determining [the] authority to grant injunctive relief."

*In re President and Directors of Georgetown College*, 331 F.2d 1000, 1005 (D.C. Cir.

1964) (quoting *United Mine Workers*). This Court should carefully protect the status quo

by maintaining the orders entered to date to assure Petitioner Aziz is not prejudiced in his

ability to litigate their DTA actions; to preserve potential remedies before this Court; and

to protect Petitioner's safety and life.

The denial of certiorari in *Boumediene* leaves unanswered predicate questions

necessary to deciding issues in Petitioner's case, including the following: Does the DTA

provide a forum for resolving issues regarding unlawful detention coextensive with

traditional habeas corpus? If not, has the writ been unconstitutionally suspended or

eliminated? Are the MCA and the DTA inapplicable given Petitioner's jurisdictional

arguments regarding the absence of initial military jurisdiction, which would foreclose a

Combatant Status Review Tribunal from constituting a competent tribunal to render any

decision regarding Petitioner? Is the government taking "additional steps to prejudice the

position of petitioners in seeking review of this Court" and, if so, should this Court "act

promptly to ensure that the office and purposes of the writ of habeas corpus are not

compromised"? (*See Boumediene,* 127 S.Ct. 1478 (2007).

The motion to dismiss should be denied because the Court has insufficient

information to answer a number of questions that the DTA proceedings will answer.

Further, if this Court eventually reaches the jurisdictional and constitutional questions,

and rules adversely to Petitioner, there must be an adequate record for the Court of

Appeals appellate review and, if necessary, for the Supreme Court to decide whether to

grant a writ of certiorari, all of which requires that these actions remain in place until

after Petitioner has exhausted his DTA procedures.  During that process, Respondents

should be foreclosed from prejudicing Petitioner's ability to litigate these questions in

this Court and the Court of Appeals. [3]

> **4.    Respondents' Main Case On Jurisdiction Only Applies To Frivolous Claims, Not The Substantial Issues Addressed In The Present Case.**

Respondents place primary reliance on *Steel Co. v. Citizens for a Better Env't*, 523 U.S.

83, 94 (1998), for the unremarkable proposition that jurisdiction is a threshold question.

Respondents ignore the preceding language in *Steel Co.* that supports this Court's jurisdiction to

maintain the action as long as a legitimate controversy exists that has not been resolved on the

merits by the Supreme Court.

---

[3]    Moreover, the Court of Appeal's *Boumediene* decision does not impair the power of this court to preserve the status quo. The government erroneously cites to *Ayuda v. Thornburg*, 919 F.2d 153 (D.C. Cir. 1990), for the proposition that a Court of Appeals opinion immediately becomes the law of the circuit, depriving the courts of the power to stay and hold in abeyance. In fact, the majority ruled in *Ayuda* that a stay was appropriate.  The government cited a concurring opinion only, and, in that opinion, the concurring Judge ultimately agreed with the majority, which rejected the proposition that the court lacked power to enter a stay.  *See Ayuda*, 919 F.2d at 153.  The other concurring and dissenting opinion correctly articulated the applicable law that, until the Supreme Court speaks on jurisdiction, the District Court has the power to determine its own jurisdiction including "minimally, the power to maintain the status quo." *Ayuda*, 919 F.3d at 155-56 (Wald, C.J., concurring and dissenting).

The starting point of *Steel Co.* is that "the district court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another'...unless the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'" 523 U.S. at 90 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83, 685 (1946)). Only when the Supreme Court has made an adverse ruling on the merits is dismissal for want of subject matter jurisdiction appropriate: "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, *foreclosed by prior decisions of this Court*, or otherwise completely devoid of merit as not to involve a federal controversy." *Id.* at 90 (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)(emphasis added)). The *Boumediene* denial of certiorari is emphatically not a ruling on the merits.

The jurisdictional issues are obviously not frivolous: the courts have been split on the constitutional issues at each level of the litigation: the District Courts split, leading to the two-to-one *Boumediene* opinion, resulting in the three-way fracture in the *Boumediene* denial of certiorari. Seldom has this country faced weightier issues about the meaning of our Constitution. The main case upon which Respondents rely establishes that the Motion to Dismiss should be denied while remedies are exhausted.

Ironically, Respondents' own Motion recognizes the Court's continuing jurisdiction while the merits are exhausted, litigated, and appealed. In footnote 15, Respondents point out that the protective order should survive dismissal, citing to the case upon which Petitioners rely –

12

*United States v. United Mine Workers*, 330 U.S. 258 (1947)(Motion at 8-9). As argued *supra* at p. 9, *United Mine Workers* establishes that the District Court has the authority throughout the litigation to maintain the status quo by enforcing the protective order and otherwise ensuring that "the office and purposes of the writ of habeas corpus are not compromised."

This Court retains the power to decide its own jurisdiction in the first instance. *See Kircher*, 126 S. Ct. at 2155; *United States v. Ruiz*, 536 U.S. 622, 628 (2002). While the efficacy of the DTA remedies are determined, it is premature for this Court to determine the dispositive questions. Meanwhile, this Court should follow the stay-and-abey norm established in *Rhines*, then, if the case is not mooted by the DTA proceedings, provide Petitioner the opportunity to make a record, present his claims, and receive decisions based on the facts and law of his individual case.

5.     **The Protective and other Procedural Orders Are Necessary To Assure That "The Office And Purpose Of The Writ Of Habeas Corpus Are Not Compromised."**

The dismissal of the District Court proceedings, with its protective orders and ruling on the filter team, would constitute exactly the type of prejudice to Petitioner's ability to litigate that Justices Kennedy and Stevens instructed that the courts should guard against. This Court properly addressed issues preliminary to ultimate disposition throughout this litigation. This Court's orders on access to counsel and the filter team should remain intact pending exhaustion of DTA remedies.

Respondents suggest that the protective order they agreed to should be renegotiated and replaced in the Circuit Court (Motion at 9-11). However, this Court has been supervising the

protective order for almost two years.  If difficulties arose beyond the powers of the parties to work out, the protective order included powerful mechanisms for Respondents to exhaust, up to and including contempt and criminal prosecution.  Respondents' failure to exhaust the available remedies should foreclose action based on Respondents' complaints.  Further, Respondents claim access would not be abruptly terminated, but would continue under a different protective order.  (Motion at 10).  Respondents' desire to substitute protective orders is not a reason to dismiss these actions instead of following the Supreme Court approved stay-and-abey procedure.

Access between Petitioners and counsel is critical in all these cases.  The protective order should remain intact, especially given that the Court of Appeals should have the option of continuing to administer the DTA litigation under the auspices of the Court's order.

> **6.      Boumediene Does Not Establish The Record To Which Petitioner Should Be Bound Because Petitioner Is Exhausting Available Remedies, And Other Legal Theories May Be Available On The Facts Of His Case.**

Respondents' request for dismissal of this case fails to recognize the unique factual setting and resulting legal issues faced by Petitioner. The *Boumediene* cases involve certain allegations and legal theories; those cases do not control all the potential issues to be raised by Petitioner in this action. *See Texas v. Cobb*, 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); *see also United States v. Booker*, 543 U.S. 220, 239-242 (2005) (limiting stare decisis effect of cases where constitutional issue was not raised or resolved).  The most basic distinction from *Boumediene* is that the scope and efficacy of the DTA remedy is being tested and will provide this Court necessary information that will only be known once the exhaustion of remedies is

completed.  Until then, the factual predicate for evaluation of the legal issues is lacking,

rendering the cases unripe for the fully developed review anticipated by Justices Kennedy and

Stevens in the *Boumediene* statement accompanying the denial of certiorari.

     The *Boumediene* cases did not resolve all potential legal issues regarding the

purported statutory disenfranchisement of the jurisdiction that existed at the filing of the

habeas petitions under *Rasul.* The post-exhaustion litigation, if not mooted by relief

granted under the DTA, should involve legal approaches that the *Boumediene* majority

did not address and resolve.  If *Rasul* means anything, the constitutional validity of the

DTA must be determined in light of the post-DTA litigation about to ensue and address

Petitioner's unique claims, including challenges under the bill of attainder, equal

protection, due process, habeas corpus, and ex post facto clauses of the Constitution.

## CONCLUSION

     Petitioner's habeas corpus rights are far from finally decided: the Supreme Court

has yet to speak on the merits as to the effect of the DTA and MCA, and Petitioner has

not had his individual facts and legal arguments heard. Under governing Supreme Court

precedent, the status quo should be preserved while the cases are litigated: under *United

Mine Workers*, the Court has "authority from the necessity of the case to make orders to

preserve the existing conditions and the subject of the petition."  Under *Rhines*, the

mechanism for permitting exhaustion of remedies without prejudice to habeas corpus

rights is to stay this action and hold it in abeyance for a reasonable time for the DTA

actions to be litigated.

For the foregoing reasons, this Court should deny Respondent's motion to dismiss, pending Petitioner's exhaustion of his DTA remedies in the Court of Appeals, and hold this action in abeyance pending Petitioner's exhaustion of those remedies and resolution by the Supreme Court of the jurisdictional issue in *Ali* of whether the MCA constitutionally stripped Guantanamo prisoners of their habeas rights, or resolution by the Supreme Court of a renewed petition for certiorari seeking review of *Boumediene*.

Date:  May 3, 2007                                  Respectfully submitted,
                                                    Counsel for Petitioner:


                                                     /s/ Michael E. Mone, Jr.
                                                    Michael E. Mone, Jr.
                                                    (MA BBO No. 634607)
                                                    ESDAILE, BARRETT & ESDAILE
                                                    75 Federal Street
                                                    Boston, MA  02110
                                                    (617) 482-0333

                                                    *Of Counsel*
                                                    Barbara J. Olshansky
                                                    Gitanjali S. Gutierrez
                                                    CENTER FOR CONSTITUTIONAL RIGHTS
                                                    666 Broadway, 7th Floor
                                                    New York, New York 10012
                                                    Tel: (212) 614-6439
                                                    Fax: (212) 614-6499

I, Michael E. Mone, Jr., certify that I today caused a true and accurate copy of Petitioner's OPPOSITION TO RESPONDENTS' MOTION TO DISMISS, MOTION FOR A STAY-AND-ABEY ORDER, AND NOTICE OF INTENT TO FILE PETITION UNDER THE DETAINEE TREATMENT ACT, together with the Proposed Order TO BE SERVED UPON THE FOLLOWING PERSONS VIA THIS COURT'S ELECTRONIC CASE FILING SYSTEM:

> Terry Henry, Esq., Senior Trial Attorney
> Andrew I. Warden, Esq., Trial Attorney
> U.S. Department of Justice
> Civil Division, Federal Programs Branch
> 20 Massachusetts Ave., NW, Room 7144
> Washington, DC 20530

This 3rd day of May, 2007.

> _/s/ Michael E. Mone, Jr._____
> Michael E. Mone, Jr.
> (MA BBO No. 634607)
> ESDAILE, BARRETT & ESDAILE
> 75 Federal Street
> Boston, MA  02110
> (617) 482-0333

17